## Case No. 1,557.

### In re BLOOM.

[17 N. B. R. 425; 17 Alb. Law J. 434; 24 Int. Rev. Rec. 166; 35 Leg. Int. 165.] [1]

District Court, D. New Jersey.    March 5, 1878.

CHATTEL MORTGAGES—VALIDITY—MORTGAGE ON STOCK IN TRADE.

A chattel mortgage on the present and after-acquired property of the mortgagor, which by its terms asserts that its end and purpose is that the lien of the mortgage may attach to all new goods brought into the store and be released from all such as are sold in the due course of a regularly conducted business, so that such mortgage may be a continuing one, is void.

[See Bowen v. Clark, Case No. 1,721.]

An involuntary petition in bankruptcy [against Erastus S. Bloom] was filed in this case on the 10th of April, 1877, the alleged bankrupt having previously, to wit, on the 10th of February, 1877, made a voluntary assignment of all his property for the benefit of his creditors under the state assignment law. All of his available assets consisted of a stock of goods, such as are usually found in a country drug store. These were claimed to be subject to liens, held by the father of the bankrupt, amounting to more than the full value of all the property. The liens consisted of two chattel mortgages; one executed and filed May 4th, 1876, to secure to Daniel Bloom (the father) five thousand dollars, and the other executed and filed February 3d, 1877, to secure indorsements by the mortgagee upon the notes of the mortgagor not exceeding six hundred dollars, and which said indorsements are not secured by the mortgage for five thousand dollars theretofore given. These mortgages were executed to secure antecedent debts and liabilites, and more than two months had elapsed between their execution and the filing of the petition in bankruptcy.

After the appointment of the assignee in bankruptcy the court made an order, directing him to sell all the personal property alleged to be included within the descriptions of said chattel mortgages, clear and discharged of all incumbrances, and transferring the lien of the mortgages, if any, to the fund realized from the sale. An application is made by the assignee to set aside the first mortgage, on the ground that it is fraudulent in law, and all the parties in interest have submitted the question to the court for determination.

[First mortgage adjudged fraudulent and not a lien, and the second mortgage adjudged valid.]

NIXON, District Judge. The mortgage in controversy is given by the bankrupt to his father, and is to be void if the mortgagor shall pay "the sum of five thousand dollars, or such part thereof as the said Erastus S.

[1] [Reprinted from 17 N. B. R. 425, by permission. 17 Alb. Law J. 434, contains only a partial report.]

Bloom shall at any time give to the said Daniel Bloom by note, book account, or for money paid by indorsement or otherwise; and it is the intent that this mortgage shall be a continuing mortgage, and shall secure and is intended to secure to said Daniel Bloom the repayment to him of any money he shall now have loaned, or may at any time hereafter loan, or for money he shall now have paid by reason of indorsing the notes of the said Erastus Bloom, or may hereafter be compelled to pay, to the intent that the said Daniel Bloom shall be fully paid off and settled with for all liabilities incurred for the benefit of said Erastus S. Bloom." The property mortgaged is "all the goods and chattels mentioned in the schedule hereto annexed, and now in, or hereafter to come into the possession of said Erastus S. Bloom, at his store in Odd Fellows' Hall, at Bloomsburg, in the county of Hunterdon." The schedule annexed is in these words: "Schedule of the goods and chattels and personal property referred to in the foregoing mortgage, and upon which it is intended this mortgage shall be a lien, viz.: 1 soda fountain and generator with fixtures, 1 safe, 3 show cases, 3 scales, 1 desk, lot of oil cans, lamps and store fixtures, 2 coal stoves, 1 prescription case, stock of drugs and patent medicines, wine and liquors, paints and oils, cigars and tobacco, lot of fancy articles, stationery and perfumery bottles, 1 table and wardrobe; being all the stock of drugs and medicines now in his store at Bloomsburg, with the tobacco, fancy articles, &c., &c., usually kept, and also whatever of the same class of goods may hereafter be brought into said store, to the end and purpose that the lien of this mortgage may attach to all new goods brought into the same, and be released from all such as are regularly sold in the due course of a regularly conducted business, so that this mortgage may be a continuing mortgage so long as there shall be a continuing indebtedness to be secured."

The difficulty with this mortgage is not, as has been suggested, because it was given in part to secure future advances, nor because it included not only the goods and chattels on hand when executed, but also all after-acquired property of like character. Mortgages with these characteristics are not necessarily bad, and it has been the inclination and tendency of courts in later years to hold such good. If the schedule had embraced the very loose and imperfect description of the property that the mortgagor had in possession, and the sentence "and also whatever of the same class of goods may hereafter be brought into said store," and had stopped there, I should probably have said, under the revealed circumstances of the case, that the mortgagee was entitled to his lien upon all the goods and chattels in the store at the date of the execution of the mortgage, and also upon all subsequent acquired property, if any, that he had taken actual possession

of under his mortgage. Such was the doctrine announced in the somewhat similar case of Miller v. Jones [Case No. 9,576], decided by his honor, Mr. Justice Strong, in the circuit court of this district, and which has been reiterated more recently by the supreme court of Rhode Island, in the cases of Williams v. Briggs and Cook v. Corthell, to be reported in the 11 R. I. 476, 482. But the parties did not stop there. They went further and added another clause to the schedule, declaring their end and purpose in executing the mortgage, and its character must be determined by the legal construction to be placed upon this declaration. A mortgage embraces a single idea, to wit, the pledge of property as security for the payment of a debt. If it contain other stipulations and provisions, which, in their necessary effect, accomplish other results, and these other results are unlawful, the whole instrument is void. The parties assert that the end and purpose of the mortgage are to enable the mortgagor to sell for his own benefit the goods and chattels specifically enumerated, and to make it a lien upon all new goods brought into the store. In other words, it is a device, whereby the mortgagor can carry on his ordinary business, with all his property, present or future, fully covered from his other creditors. An instrument operating in this manner necessarily hinders, delays, and defrauds creditors, and is void under the second section of the statute of frauds.

No argument can make it plainer that this mortgage is fraudulent in law, than the mere statement of the intention of the parties in the body of the instrument itself, and if authority is needed, the case of Robinson v. Elliott, 22 Wall. [89 U. S.] 513, is precisely in point. The agreement therein was "that until default shall be made in the payment of some one of said notes, or in some paper in renewal thereof, the parties of the first part may remain in possession of said goods, wares, and merchandise, and may sell the same as heretofore and supply their places with other goods, and the goods substituted by purchase for those sold shall, upon being put in said store, or in any other store in said city where the same may be put for sale by said parties of the first part, be subjected to the lien of this mortgage. The supreme court in construing such a provision, not distinguishable in terms from the one under consideration, determined that its legal effect was to render the whole mortgage void. Mr. Justice Davis, expressing the opinion of the court, said: "Whatever may have been the motive which actuated the parties to this instrument, it is manifest that the necessary result of what they did was to allow the mortgagors, under cover of the mortgage, to sell the goods as their own and appropriate the proceeds to their own purposes, and this, too, for an indefinite length of time. A mortgage, which in its very terms contemplates

such results, besides being no security to the mortgagee, operates in the most effectual manner to ward off other creditors; and where the instrument on its face shows that the legal effect of it is to delay creditors, the law imputes to it a fraudulent purpose."

The judgment of the court therefore is, that the first mortgage of five thousand dollars is fraudulent in law, and that it is no lien upon the fund in the hands of the assignee. The second mortgage for six hundred dollars is not obnoxious to these objections, and is a lien upon the fund to the extent of the goods and chattels enumerated in the schedule, and which were on hand before the sale by the assignee. If the assignee has doubts about the value of the chattels included in the second mortgage, and which remained to the time of the sale, a reference will be ordered to ascertain their value; but if he is clear, from his knowledge of the property, that they bought at the sale more than sufficient to satisfy the mortgage, the expense of a reference may be saved, and he may pay the amount due upon the mortgage out of the fund.